**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael L Quiel, | No. CV-22-02175-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, et al., | |
| Defendants. | |

Plaintiff Michael L. Quiel is suing Defendants Cheryl Bradley, Monica Edelstein, Timothy Stockwell, Christopher Rusch (now known as Christian Reeves), and the United States Internal Revenue Service ("IRS") for various federal and state law claims. Pending before the Court are the United States' motion to dismiss (Doc. 26), Edelstein and Stockwell's motion to dismiss (Doc. 27), Bradley's motion to dismiss (Doc. 45), and Plaintiff's motion for default judgment (Doc. 48). The motions are fully briefed.[1] (Docs. 26–30, 45–48.)

For the reasons set forth below, the Court grants the United States' motion to dismiss (Doc. 26), Edelstein and Stockwell's motion to dismiss (Doc. 27), and Bradley's motion to dismiss (Doc. 45). The Court denies Plaintiff's motion for default judgment (Doc. 48) and orders Plaintiff to show cause within fourteen days why this case should not be dismissed.

---

[1] Oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

## I. BACKGROUND[2]

On December 27, 2022, Plaintiff initiated this action, alleging that he "was the unfortunate victim of an ill-conceived internal investigation by IRS agents" in conjunction with unidentified individuals "as part of the government's attempt to identify and crackdown on U.S. Citizens who held foreign bank accounts and who . . . failed to register and/or report same as required by law." (Doc. 6 ¶ 12.)

Plaintiff claims that, in 2006, he and an unidentified business partner sought to expand their unidentified business activities and so they retained Rusch, a licensed attorney who held himself out as a specialist in the formation and structure of international corporate entities. (¶¶ 13, 14.) After Plaintiff provided Rusch with his personal identifying information, Rusch allegedly engaged in identity theft, impersonating Plaintiff and his business partner in the operation of foreign bank accounts. (¶ 16.) While still advising Plaintiff as his attorney, Rusch—who allegedly was a person of interest in an active IRS investigation—met with IRS agents and "provided documents to them, in [an] effort[] to curry favor for himself." (¶ 22.) Plaintiff claims Rusch violated attorney-client privilege and falsely implicated Plaintiff in illegal schemes. (¶ 23.)

Plaintiff asserts that these foreign accounts ultimately served as the grounds for "unlawful" criminal and civil proceedings brought against Plaintiff.[3] (¶ 16.) In 2011, Plaintiff was indicted for various financial crimes, including conspiracy to defraud the United States (18 U.S.C. § 371), making and subscribing a false tax return (26 U.S.C. § 7206(1)), and willful failure to file a Report of Foreign Bank and Financial Accounts ("FBAR") (31 U.S.C. §§ 5314, 5322(a)). *United States v. Quiel*, No. 2:11-cr-02385-JAT-2 (D. Ariz.) (Doc. 4.) In 2013, Plaintiff's charges were tried before a jury. Bradley, an IRS

---

[2] This section draws from the allegations in the First Amended Complaint ("FAC") (Doc. 6), which are accepted as true for the purpose of resolving the various Rule 12(b)(6) motions and in ruling on the motion for default judgment.

[3] Despite being the basis for Plaintiff's claims against Defendants, Plaintiff does not identify any of these proceedings in his FAC. Thus, the Court goes outside of the FAC and takes judicial notice of such actions. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.").

agent, testified at the trial, and Edelstein and Stockwell, both Assistant United States Attorneys, prosecuted the charges.

Plaintiff claims that Rusch and Bradley "gave false testimony, under oath at trial in coordination with the ultra vires prosecution of the Plaintiff by defendants." (Doc. 6 ¶ 25.) Plaintiff further asserts that Edelstein, Bradley, and Rusch (no mention of Stockwell, though he's a named defendant) "acted with actual malice and conspired to present perjured testimony to the Court and jury, under oath resulting in the erroneous conviction of the Plaintiff." (¶ 26.) Plaintiff alleges that this "was accomplished by additional skullduggery by denying Plaintiff access to his Master IRS file which contained evidence necessary to prove the foregoing assertions." (¶ 28.)

The jury convicted Plaintiff of willful subscription to false tax returns—which Plaintiff alleges is a "wrongful" conviction—and acquitted him of conspiracy to defraud the United States. *Quiel*, No. 2:11-cr-02385-JAT-2 (Doc. 289.) The jury could not come to an agreement as to whether Plaintiff willfully failed to file FBARs, so the judge declared a mistrial on these counts. *Id.* (Docs. 281, 290.) In 2014, the Ninth Circuit affirmed Plaintiff's conviction. *United States v. Quiel*, 595 F. App'x 692 (9th Cir. Dec. 19, 2014), *cert. denied*, 575 U.S. 1011 (2015). Plaintiff's subsequent efforts to vacate his sentence and obtain a new trial have proven unsuccessful. *See United States v. Kerr*, No. 11-cr-02385-JAT, 2015 WL 4275183 (D. Ariz. July 15, 2015) (denying motion for new trial), *aff'd*, 709 F. App'x 431 (9th Cir. Sept. 27, 2017); *Quiel v. United States*, No. 11-cr-02385-JAT-2, 2017 WL 4803823 (D. Ariz. Oct. 25, 2017) (denying motion to vacate under 28 U.S.C. § 2255), *aff'd*, No. 17-17540, 2018 WL 11448309, (9th Cir. Dec. 21, 2018).

In 2021, after receiving authorization from the IRS, the Department of Justice filed a civil suit against Plaintiff seeking to reduce to judgment FBAR penalties assessed against him. *United States v. Quiel*, No. 21-cv-00094-GMS (D. Ariz.) (Doc. 1). In January 2024, a jury found in favor of Plaintiff, so the complaint and action were dismissed. *Id.* (Doc. 129). Post-trial motions are pending. *Id.* (Doc. 140).

In the instant civil damages suit, Plaintiff is suing the United States, Rusch (the

attorney who allegedly stole his identity), Edelstein and Stockwell (the prosecutors in his criminal case), and Bradley (the IRS agent who testified against Plaintiff in his criminal trial). Plaintiff alleges RICO violations[4] (Counts I and II), malicious prosecution (Count III), wrongful institution of civil process (Count IV), and tortious interference with business relationships (Count V) against Defendants.

## II. Motion to Dismiss by the United States

The United States argues that sovereign immunity bars all five claims against it and so they should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 26). The Court agrees.

Sovereign immunity goes to the Court's subject matter jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."). Under the doctrine of sovereign immunity, the United States may only be sued where it has expressly consented to such suit by statute. *Block v. North Dakota*, 461 U.S. 273, 287 (1983). If the United States has consented to a particular suit, "it may define the conditions under which it is willing to be sued." *McMillan v. Dep't of Interior*, 907 F. Supp. 332, 325 (D. Nev. 1995). "A party suing the United States must point to an unequivocal waiver of sovereign immunity." *Id.* (citing *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)).

Turning first to the RICO Counts (Counts I and II): "Federal courts that have addressed the question of whether RICO waives sovereign immunity have been unanimous in rejecting the liability of federal agencies." *Kahre v. Damm*, No. 2:07-CV-00231-DAE-RJJ, 2007 WL 9728869, at *6 (D. Nev. Dec. 18, 2007) (collecting cases); *see also McMillan v. Dep't of Interior*, 907 F. Supp. 322, 326 (D. Nev. 1995), *aff'd* 87 F.3d 1320 (9th Cir. 1996) ("No RICO statute waives the sovereign immunity of the United States or its agencies."). Because the United States has not waived its sovereign immunity for civil RICO actions, Counts I and II as asserted against the United States fail as a matter of law.

---

[4] The Racketeer Influence and Corrupt Organizations Act ("RICO") "provides a private civil action to recover treble damages for injury 'by reason of a violation of' its substantive provisions." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985); 18 U.S.C. § 1964(c).

*See Kahre*, 2007 WL 9728869, at *6 (holding same).

Sovereign immunity also precludes the remaining three tort claims (Counts III to V). Although the Federal Torts Claims Act ("FCTA") waives the United States' sovereign immunity from suits in tort, the FCTA also "preserves the [g]overnment's immunity from suit for [a]ny claim arising out of . . . malicious prosecution, abuse of process . . . or interference with contract rights." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (cleaned up); 28 U.S.C. § 2680(h). Plaintiff does not point to any unequivocal waiver of sovereign immunity as it pertains to his claims of malicious prosecution (Count III), wrongful institution of civil process (Count IV), and tortuous interference (Count V). Thus, like Counts I and II, Counts III to V fail as a matter of law and as such are dismissed.

**III.     Motions to Dismiss by Edelstein, Stockwell, and Bradley**

The Court first addresses Plaintiff's tort claims (Counts III to V) against Edelstein, Stockwell, and Bradley before turning to the RICO allegations (Counts I and II).

A. <u>The Tort Claims (Counts III to V)</u>

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The immunity extends to an employee's wrongful or negligent acts or omissions so long as the employee was acting within the scope of his or her employment. *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017). When a federal employee is sued for a common-law tort, the Westfall Act allows the Attorney General "to certify that the employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Osborn*, 549 U.S. at 229–30 (quoting 28 U.S.C. § 2679(d)(1)). The Attorney General, pursuant to his authority under 28 U.S.C. § 510, has delegated this authority to certify to the Director of the Torts Branch, Civil Division, Department of Justice. 28 C.F.R. § 15.4.

Upon certification, the United States shall be substituted as the defendant in the tort suit, and the government employee will be "dismissed from the suit, and is immune from

other civil actions arising from the alleged tort." *Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006). The Attorney General's certification that the employee was acting within the scope of his or her employment is "conclusive unless challenged." *Saleh*, 848 F.3d at 889. Here, Salvatore D. Alessio Jr., Director of the Torts Branch of the Civil Division, certified that Edelstein, Stockwell, and Bradley were acting within the scope of their office or employment at the time of the incidents out of which Plaintiff's third (malicious prosecution), fourth (wrongful institution of civil process), and fifth (tortious interference) claims for relief arose. (Doc. 25.) Plaintiff has not challenged such certification. Accordingly, the certification is conclusive. As to Counts III to V, the United States is substituted as the sole defendant,[5] and Edelstein, Stockwell, and Bradley are immune from any civil actions arising from these alleged torts.

### B.  The RICO Claims (Counts I and II)

The remaining claims against Edelstein, Stockwell, and Bradley are the alleged RICO violations (Counts I and II), which they contend should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for "lack of a cognizable legal theory." (Docs. 27, 45.)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). "In evaluating a Rule 12(b)(6) motion, the [C]ourt accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." *Adams v. U.S. Forest Srvc.*, 671 F.3d 1138, 1142–43 (9th Cir. 2012). However, the Court "does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). A Rule 12(b)(6) motion "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[5] As discussed above, the United States is entitled to sovereign immunity as to Counts III to V.

- 6 -

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a RICO claim, "a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

Before even reaching whether Plaintiff has alleged sufficient facts to state plausible RICO claims, the Court finds that Plaintiff's claims against Edelstein and Stockwell fail as a matter of law because they are protected by absolute prosecutorial immunity. A prosecutor is shielded by absolute prosecutorial immunity "when performing the traditional functions of an advocate" in initiating and pursuing a criminal prosecution. *Kalina v. Fletcher*, 522 U.S. 118, 123–25 (1997); *Van Beek v. AG-Credit Bonus Partners*, 316 Fed. Appx. 554, 555–56 (Nov. 13, 2008) (affirming dismissal of RICO claim against Assistant United States Attorney on the basis of prosecutorial immunity). "Such immunity applies even in cases involving allegations of malice, bad faith, or conspiracy." *Boulware v. Dept's of Ins.*, No. CV-09-4325-R(E), 2009 WL 3271060, at *6 (C.D. Cal. Oct. 8, 2009) (citing *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986)).

Looking to the FAC, Plaintiff's RICO claims arise out of his criminal proceedings in 2013. All the alleged "acts of racketeering" are based on Plaintiff's vague claim that Edelstein, as Assistant United States Attorneys in Plaintiff's 2013 criminal case, "acted with actual malice and conspired to present perjured testimony to the Court and jury, under oath resulting in the erroneous conviction of the Plaintiff."[6] (Doc. 6 ¶ 26.) Plaintiff also

---

[6] Aside from being barred under absolute prosecutorial immunity, to the extent Plaintiff's RICO claims are based on what he claims is an "erroneous" and "wrongful" conviction, they are *Heck*-barred. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding that to pursue a claim for damages arising out an allegedly unconstitutional conviction or imprisonment, a civil rights plaintiff must prove the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus"); *see also Boulware*, 2009 WL 3271060, at *5 (dismissing Plaintiff's RICO claims because the "Complaint clearly implicated the validity of Plaintiff's insurance fraud conviction"). Here, Plaintiff has not alleged or established

asserts that the alleged racketeering acts are related to a "common purpose of . . . depriving Plaintiff of his liberty interest through the unconstitutional utilization of the federal criminal justice system." (*Id.* ¶ 38.) As to Stockwell, Plaintiff does not plead a single allegation of misconduct against him. Indeed, Stockwell's name appears only once throughout the entire FAC: on the second page, in the section identifying all parties to the suit. (*Id.* ¶ 7.)

Further, Plaintiff offers no explanation in his response brief as to why absolute prosecutorial immunity may not apply here. Thus, the Court finds that Edelstein and Stockwell are entitled to absolute prosecutorial immunity. Plaintiff's RICO claims against them are dismissed. *See Boulware*, 2009 WL 3271060, at *6 ("To the extent Plaintiff seeks damages against the Defendant prosecutors for acts taken in connection with the prosecution of the criminal proceedings against Plaintiff, those Defendants are immune from suit.").

Bradley, on the other hand, is protected by absolute witness immunity. Plaintiff alleges Bradley gave "false testimony, under oath at trial in coordination with the ultra vires prosecution of the Plaintiff by defendants." (Doc. 6 ¶ 25.) Plaintiff alleges Bradley conspired with Edelstein to present perjured testimony to the Court and jury, resulting in Plaintiff's "erroneous conviction" and "needless[] incarcerat[ion]."

"[W]itnesses are absolutely immune from damages liability based on their testimony." *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (finding that police officer who committed perjury during a state court criminal trial is granted absolute immunity from civil liability). "Absolute witness immunity is based on the policy of protecting the judicial process and is necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Franklin v. Terr*, 201 F.3d 1098, 1101 (9th Cir. 2000) (rejecting plaintiff's attempt "to circumvent" absolute witness immunity "by alleging a conspiracy to present false testimony"). The Court finds that

---

that any court has overturned or otherwise invalidated his 2013 criminal conviction. To the contrary, as already noted, Plaintiff's successive efforts to vacate his sentence and obtain a new trial have been unsuccessful.

- 8 -

Bradley is entitled to such protection and therefore is immune from Plaintiff's RICO claims.

Even if Bradley, Edelstein, and Stockwell were not immune from suit, Plaintiff fails to plead sufficient factual matter to state plausible RICO claims. First, it is far from clear what "enterprise" Plaintiff alleges exists. An enterprise "must have some sort of structure for making decisions and mechanisms for controlling and directing the affairs of the group on an on-going basis rather than an ad hoc basis. A conspiracy is not a RICO enterprise." *Rotec Industries, Inc. v. Mitsubishi Corp.*, 163 F. Supp. 2d 1268, 1279 (D. Or. 2001). At most, Plaintiff alleges that "the defendant parties formed an association in fact for the purpose of engaging in the conduct." (Doc. 6 ¶ 32.) This, however, is a legal conclusion, not a factual allegation supporting the existence of an "enterprise." Moreover, to constitute an "association-in-fact enterprise" under RICO, there must be "(i) a common purpose of engaging in a course of conduct; (ii) evidence of an 'ongoing organization, formal or informal'; and (iii) evidence that the various associates function as a continuing unit." *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp.2d 1062, 1088 (N.D. Cal. 2013). Plaintiff's FAC contains no factual allegations as to what "common purpose" Bradley, Stockwell, Edelstein, and Rusch (discussed later in this order) may have had with one another; as to what type of organization they had; or that they functioned as a unit.

Plaintiff also fails to plead a pattern of racketeering activity. Racketeering activity is "any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud, and obstruction of justice." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). A "pattern" requires at least two acts of racketeering activity. *Sanford v. MemberWorks Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Plaintiff asserts the following racketeering activity: state law extortion; mail fraud; wire fraud; financial institution fraud; obstruction of justice; retaliating against a witness, victim or informant; and interference with interstate commerce and extortion. (Doc. 6 ¶ 36.) Yet Plaintiff's FAC inadequately pleads factual matters that could give rise to a plausible inference that Defendants engaged in any of these acts. Rather, Plaintiff's FAC is riddled

with vague and conclusory allegations—for instance, that Defendants "conspired to present perjured testimony to the Court and jury" and deprived him of accessing his IRS files which resulted in him being "wrongfully prosecuted," "erroneously convicted," and "needlessly incarcerated." Even construing the FAC liberally,[7] the Court discerns no plausible RICO violation. And because Plaintiff fails to plead any substantive violations of RICO, he also fails to plead a plausible claim of RICO conspiracy. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

In sum, Plaintiff's RICO claims against Edelstein, Stockwell, and Bradley are barred by prosecutorial and witness immunity in addition to being inadequately pled, and as such are dismissed.

**IV.   Motion for Default Judgment against Rusch**

This is now Plaintiff's third attempt at seeking default judgment against Rusch. On August 15, 2023, Plaintiff—who is represented by counsel—filed a motion for default judgment against Rusch. (Doc. 37.) The Court denied the motion and explained that default judgment is a two-step process, requiring: (1) Plaintiff apply to the Clerk for the entry of default under Fed. R. Civ. P. 55(a) and (2) upon entry of default, the Plaintiff move for default judgment under Fed. R. Civ. P. 55(b). Plaintiff had neither applied to the Clerk for entry of default, nor had the Clerk entered one. Thus, the Court denied Plaintiff's motion for being procedurally improper.

On August 20, 2023, Plaintiff filed with this Court a "Request that Clerk of the Court File a Certificate of Default Judgment." (Doc. 40). The Court denied this request and, once again, explained that counsel must first apply to the Clerk for entry of default and the Clerk must enter one *before* counsel can file a motion for default judgment with this Court. The Court explained that entry of default is different from default judgment and

---

[7] Courts construe pleadings liberally and afford the plaintiff the benefit of the doubt only where the plaintiff appears pro se. *Lazarescu v. Ariz. State Univ.*, 230 F.R.D. 596, 600 (D. Ariz. 2005); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Here, Plaintiff appears with counsel and therefore is not entitled to less stringent pleading standards.

that to the extent counsel believes this case is one of those relatively rare cases that are "for a sum certain or a sum that can be made certain by computation," such that the Clerk may enter judgment on its own, see Fed. R. Civ. P. 55(b)(1), he is mistaken. *See Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 928–29 (9th Cir. 2004) ("[A] claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled[.]"); *Big Chuy Distributors & Sons Inc., v. AG-Wise Inc.*, No. CIV 12-109 TUC-RCC-LAB, 2012 WL 12941117 (D. Ariz. Oct. 24, 2012). The Court also noted that any motion for default judgment must address the *Eitel* factors, 782 F.2d 1470, 1471–72 (9th Cir. 1986), and prove all damages sought, *see Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). The Court emphasized this latter requirement, given Plaintiff's demand for over $15,000,000 without any explanation of how that amount had been calculated or evidenced. Finally, the Court strongly encouraged Plaintiff's counsel to take some time to review Federal Rule of Civil Procedure 55 and case law interpreting and applying it, including the authorities cited in the Court's order and perhaps some decisions from this District entering default judgments, before submitting another filing with the Court.

From Plaintiff's pending motion for default judgment, it does not appear counsel took heed. Though Plaintiff applied to the Clerk for entry of default and default was entered (Doc. 43), Plaintiff's motion for default judgment (Doc. 45) does not address any of the *Eitel* factors nor does it make any substantive arguments for why default judgment should be granted in his favor.[8] Rather, Plaintiff spends the entirety of his motion attempting to explain how he calculated his demand of $15,000,000.

The general rule is that default judgments are disfavored. *Eitel*, 782 F.2d at 1472.

---

[8] Plaintiff asserts in his motion that this Court "stated that this case was not one considered 'sum certain' and that therefore, a hearing on the matter is required." (Doc. 48.) Not so. Although the Court noted that this case failed to qualify as one of the relatively rare cases that are for a sum certain, the Court at no point stated that a hearing on the matter is required for default judgment. *Eitel*, 782 F.2d at 1471–72 (holding that decision to grant or deny default judgment under Rule 55(b) is within the discretion of the Court); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (holding that default judgment may be entered without a hearing where amount claimed is for a liquidated sum or capable of mathematical calculation).

- 11 -

The Court has discretion in granting or denying default judgment. *Id.* at 1471. Some factors the Court may consider include the "merits of a plaintiff's substantive claims" and the "sufficiency of the complaint." *Id.* "A party seeking default judgment bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Szabo v. Sw. Endocrinology Assocs. PPLC*, No. CV-20-01896-PHX-DWL, 2021 WL 3411084, at *2 (D. Ariz. July 27, 2021). Plaintiff falls seriously short of meeting this burden: his FAC is far from sufficient on its face, and the merits of his substantive claims are questionable at best.

As noted, Plaintiff asserts five counts in his complaint: RICO; RICO conspiracy; malicious prosecution; wrongful institution of civil process; and tortious interference. And as already discussed, Plaintiff does not plead sufficient factual matter to sustain either of his RICO claims. Plaintiff also does not plead sufficient factual matters to sustain his remaining tort claims against Rusch.

In Arizona, the elements of a malicious prosecution claim are: "(1) a criminal prosecution, (2) that terminates in favor of the plaintiff, (3) with the defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."). Here, Plaintiff's criminal prosecution did *not* end in his favor. Nor is there any allegation that Rusch wrongfully caused the charged to be filed. Thus, Plaintiff fails to state a plausible claim of malicious prosecution.

"To state a claim for wrongful institution of civil proceedings, a plaintiff must allege that the defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun [or maintained] without probable cause (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Donahue v. Arpaio*, 869 F. Supp. 2d 1020, 1057 (D. Ariz. 2012). Plaintiff again fails to plead a plausible claim. For one, Plaintiff does not allege that Rusch instituted a civil action against him. For that matter, Plaintiff does not identify a single proceeding,

criminal or civil, in his FAC. Plaintiff vaguely refers to criminal and civil proceedings instituted against him, but he does not identify the who, what, where, and when of any of these proceedings. Indeed, the Court took judicial notice of these actions on its own accord due to the FAC's considerable lack of detail. Even if Plaintiff had identified these proceedings, his claim would still fail given that the civil action against him was brought by the Department of Justice, not Rusch. *See United States v. Quiel*, No. 21-cv-00094-GMS (D. Ariz.) (Doc. 1).

Turning to the last claim: "Tortious interference with contract or business expectancy has five elements under Arizona law: (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of the relationship or expectancy; (3) defendant's intentional interference in inducing or causing the breach; (4) defendant's interference must be improper; and (5) resulting damages." *Wolf Designs LLC v. Fire 18 Designs LLC*, 635 F. Supp. 3d 787, 799 (D. Ariz. 2022). Here, Plaintiff neither alleges a harm or a business for that matter. At one point in the FAC, Plaintiff alludes to a "business partner." Yet, at no other point in the FAC does Plaintiff identity this so-called business or how Rusch allegedly interfered with any contract or business expectancy. At most, Plaintiff asserts that Rusch engaged in identity theft and opened foreign bank accounts in Plaintiff's name. But these allegations do not support a plausible claim of tortious interference.

In short, Plaintiff's FAC fails to plead any plausible claims for relief against Rusch, and his motion does little to justify why he is entitled to default judgment. Accordingly, the Court denies Plaintiff's motion for default judgment (Doc. 48) and orders Plaintiff to show cause within fourteen days why this entire case should not be dismissed.

**IT IS SO ORDERED** the United States' motion to dismiss (Doc. 26), Monica Edelstein and Timothy Stockwell's motion to dismiss (Doc. 27), and Cheryl Bradley's motion to dismiss (Doc. 45) are **GRANTED**. All claims against the United States, Edelstein, Stockwell, and Bradley are dismissed, and the Clerk will terminate them as defendants on the docket.

**IT IS FURTHER ORDERED** that Plaintiff's motion for default judgment against Christopher Rusch (Doc. 48) is **DENIED**. Within fourteen (14) days of this order, Plaintiff is **ORDERED** to show cause why this case should not be dismissed. The Clerk of the Court is directed to dismiss this case in its entirety, without further order of the Court, if Plaintiff does not respond to this order to show cause within the timeframe specified herein.

Dated this 21st day of February, 2024.

Douglas L. Rayes
United States District Judge