1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Michael L Quiel,                          No. CV-22-02175-PHX-DLR

10                    Plaintiff,               **ORDER**

11   v.

12   United States of America, et al.,

13                    Defendants.

14

15

16         Before the Court is Plaintiff Michael L. Quiel's amended motion for entry of default

17   judgment (Doc. 55), which will be denied.

18   **I.      Background**

19         Plaintiff, through counsel, filed this action against Defendants Cheryl Bradley,

20   Monica Edelstein, Timothy Stockwell, Christopher Rusch, and the United States Internal

21   Revenue Service ("IRS"). (Doc. 6.) Plaintiff alleges that he "was the unfortunate victim of

22   an ill-conceived internal investigation by IRS agents" in conjunction with unidentified

23   individuals "as part of the government's attempt to identify and crackdown on U.S.

24   Citizens who held foreign bank accounts and who . . . failed to register and/or report same

25   as required by law."  (Doc. 6 ¶ 12.) Plaintiff claims that, in 2006, he and an unidentified

26   business partner sought to expand their unidentified business activities and so they retained

27   Rusch, a licensed attorney who held himself out as a specialist in the formation and

28   structure of international corporate entities. (¶¶ 13, 14.) After Plaintiff provided Rusch with

his personal identifying information, Rusch allegedly engaged in identity theft, impersonating Plaintiff and his business partner in the operation of foreign bank accounts. (¶ 16.) While still advising Plaintiff as his attorney, Rusch—who allegedly was a person of interest in an active IRS investigation—met with IRS agents and "provided documents to them, in [an] effort[] to curry favor for himself." (¶ 22.) Plaintiff claims Rusch violated attorney-client privilege and falsely implicated Plaintiff in illegal schemes. (¶ 23.)

Plaintiff asserts that these foreign accounts ultimately served as the grounds for "unlawful" criminal and civil proceedings brought against Plaintiff. (¶ 16.) In 2011, Plaintiff was indicted for various financial crimes, including conspiracy to defraud the United States (18 U.S.C. § 371), making and subscribing a false tax return (26 U.S.C. § 7206(1)), and willful failure to file a Report of Foreign Bank and Financial Accounts ("FBAR") (31 U.S.C. §§ 5314, 5322(a)). *United States v. Quiel*, No. 2:11-cr-02385-JAT-2 (D. Ariz.) (Doc. 4.) In 2013, Plaintiff's charges were tried before a jury. Bradley, an IRS agent, testified at the trial, and Edelstein and Stockwell, both Assistant United States Attorneys, prosecuted the charges.

Plaintiff claims that Rusch and Bradley "gave false testimony, under oath at trial in coordination with the ultra vires prosecution of the Plaintiff by defendants." (Doc. 6 ¶ 25.) Plaintiff further asserts that Edelstein, Bradley, and Rusch "acted with actual malice and conspired to present perjured testimony to the Court and jury, under oath resulting in the erroneous conviction of the Plaintiff." (¶ 26.) Plaintiff alleges that this "was accomplished by additional skullduggery by denying Plaintiff access to his Master IRS file which contained evidence necessary to prove the foregoing assertions." (¶ 28.)

The jury convicted Plaintiff of willful subscription to false tax returns—which Plaintiff alleges is a "wrongful" conviction—and acquitted him of conspiracy to defraud the United States. *Quiel*, No. 2:11-cr-02385-JAT-2 (Doc. 289.) The jury could not come to an agreement as to whether Plaintiff willfully failed to file FBARs, so the judge declared a mistrial on these counts. *Id.* (Docs. 281, 290.) In 2014, the Ninth Circuit affirmed Plaintiff's conviction. *United States v. Quiel*, 595 F. App'x 692 (9th Cir. Dec. 19, 2014), *cert. denied*,

575 U.S. 1011 (2015). In 2021, after receiving authorization from the IRS, the Department of Justice filed a civil suit against Plaintiff seeking to reduce to judgment FBAR penalties assessed against him. *United States v. Quiel*, No. 21-cv-00094-GMS (D. Ariz.) (Doc. 1). In January 2024, a jury found in favor of Plaintiff, so the complaint and action were dismissed. *Id.* (Doc. 129).

In this case, Plaintiff brings claims against Defendants for violations of the Racketeer Influence and Corrupt Organizations ("RICO") Act (Counts I and II), malicious prosecution (Count III), wrongful institution of civil process (Count IV), and tortious interference with business relationships (Count V). The United States, Edelstein, Stockwell, and Bradley filed motions to dismiss (Doc. 26, 27, 45), which the Court granted (Doc. 49).

Rusch did not appear in this action. Plaintiff moved twice for entry of a default judgment against Rusch, which the Court denied because Plaintiff had not first applied to the Clerk of the Court to enter default. (Docs. 37, 39, 40, 41.) On his third attempt, Plaintiff applied to the Clerk for entry of default, which the Clerk granted. (Docs. 42, 43.) Plaintiff then filed a third motion seeking entry of a default judgment against Rusch. (Doc. 48.) The Court denied that motion for two reasons. First, the Court noted that Plaintiff failed to address any of the factors governing the entry of default judgments. (Doc. 49 at 11.) And second, the Court found that default judgment would not be warranted because Plaintiff's first amended complaint ("FAC") fails to state plausible claims against Rusch. (*Id.* at 12-13.) On the latter point, the Court explained:

> Plaintiff asserts five counts in his complaint: RICO; RICO conspiracy; malicious prosecution; wrongful institution of civil process; and tortious interference. And as already discussed, Plaintiff does not plead sufficient factual matter to sustain either of his RICO claims. Plaintiff also does not plead sufficient factual matters to sustain his remaining tort claims against Rusch.
>
> In Arizona, the elements of a malicious prosecution claim are: "(1) a criminal prosecution, (2) that terminates in favor of the plaintiff, (3) with the defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th

Cir. 2004) ("Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed."). Here, Plaintiff's criminal prosecution did *not* end in his favor. Nor is there any allegation that Rusch wrongfully caused the charged to be filed. Thus, Plaintiff fails to state a plausible claim of malicious prosecution.

"To state a claim for wrongful institution of civil proceedings, a plaintiff must allege that the defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun [or maintained] without probable cause (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Donahue v. Arpaio*, 869 F. Supp. 2d 1020, 1057 (D. Ariz. 2012). Plaintiff again fails to plead a plausible claim. For one, Plaintiff does not allege that Rusch instituted a civil action against him. For that matter, Plaintiff does not identify a single proceeding, criminal or civil, in his FAC. Plaintiff vaguely refers to criminal and civil proceedings instituted against him, but he does not identify the who, what, where, and when of any of these proceedings. Indeed, the Court took judicial notice of these actions on its own accord due to the FAC's considerable lack of detail. Even if Plaintiff had identified these proceedings, his claim would still fail given that the civil action against him was brought by the Department of Justice, not Rusch. *See United States v. Quiel*, No. 21-cv-00094-GMS (D. Ariz.) (Doc. 1).

Turning to the last claim: "Tortious interference with contract or business expectancy has five elements under Arizona law: (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of the relationship or expectancy; (3) defendant's intentional interference in inducing or causing the breach; (4) defendant's interference must be improper; and (5) resulting damages." *Wolf Designs LLC v. Fire 18 Designs LLC*, 635 F. Supp. 3d 787, 799 (D. Ariz. 2022). Here, Plaintiff neither alleges a harm or a business for that matter. At one point in the FAC, Plaintiff alludes to a "business partner." Yet, at no other point in the FAC does Plaintiff identity this so-called business or how Rusch allegedly interfered with any contract or business expectancy. At most, Plaintiff asserts that Rusch engaged in identity theft and opened foreign bank accounts in Plaintiff's name. But these allegations do not support a plausible claim of tortious interference.

In short, Plaintiff's FAC fails to plead any plausible claims for relief against Rusch, and his motion does little to justify why he is entitled to default judgment.

(*Id.*) The Court then directed Plaintiff to show cause why the claims against Rusch should not be dismissed, as the Court had already done with the claims against the other Defendants. (*Id.* at 13-14.)

In response, Plaintiff filed what essentially was a fourth motion for entry of a default judgment. (Doc. 50.) The Court struck the brief as non-responsive to the order to show cause but gave Plaintiff additional time to file a brief addressing the issues identified in the Court's order. (Doc. 51.) Thereafter, counsel for Plaintiff withdrew from the case and Plaintiff, now proceeding *pro se*, sought an additional extension of time in which to respond to the order to show cause. (Doc. 52.) The Court granted Plaintiff his requested extension. (Doc. 53.) Plaintiff then filed the pending amended motion for entry of default judgment against Rusch. (Doc. 55.)

**II.    Legal Standard**

Whether to enter a default judgment is purely discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court may consider the following factors when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Although the Court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

**III.    Analysis**

The Court has reviewed Plaintiff's motion and remains unpersuaded that default judgment is warranted. Factor 1 (the possibility of prejudice to the plaintiff) ordinarily favors entry of a default judgment because, without a default judgment, Plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). However, the possibility of such prejudice is mitigated by factors 2 and 3, which weigh against default judgment because, as the Court explained in its dismissal order and order to show cause, the FAC fails to state plausible claims against Rusch. Plaintiff is less likely to be prejudiced by the denial of a default judgment in a case he was unlikely to win in the first place. Factor 5 likewise weighs against

entry of a default judgment because the questionable merit of Plaintiff's claims increases the possibility that factual disputes would exist had Rusch appeared. The Court also finds that factor 4, the amount of money at stake, counsels against entry of a default judgment. Plaintiff seeks $15,000,000 against Rusch, which is an enormous sum that the Court is unwilling to award on a default judgment motion given its reservations about the merits of Plaintiff's complaint. This is especially so where, as here, Rusch was served by publication. (Doc. 32.) Although the Federal Rules permit service by publication in some circumstances, "it is generally recognized that service by publication rarely results in actual notice." *United States v. Benson*, No. 19-cv-05454-TSH, 2019 WL 6612246, at *2 (N.D. Cal. Dec. 5, 2019). The method of service raises the possibility that Rusch's default might have been attributable to lack of actual notice, rather than a deliberate choice not to participate in this litigation (factor 6). Finally, the policy favoring decisions (factor 7) on the merits always weighs against entry of a default judgment.

For these reasons,

**IT IS ORDERED** that Plaintiff's amended motion for entry of default judgment (Doc. 55) is **DENIED**.

**IT IS FURTHER ORDERED** that the claims against Rusch are dismissed. The Clerk of the Court is directed to terminate this case.

Dated this 14th day of March, 2025.


Douglas L. Rayes
Senior United States District Judge

- 6 -